W. A. Morville v. The State.

No. 1343.   Decided November 8, 1911.

Rehearing denied December 6, 1911.

**1.—Bigamy—Former Jeopardy—Invalid Indictment.**

Where, upon trial of bigamy, the case first went to trial on an invalid indictment, and before a verdict was reached the prosecution was dismissed by permission of the court, and another indictment found upon which the defendant was tried and convicted, he could not plead former jeopardy.

**2.—Same—Indictment—Precedent.**

Where, upon trial of bigamy, the indictment followed approved precedent, the same was sufficient.

**3.—Same—Evidence—Variance—Maiden Name.**

Upon trial of bigamy, there was no error in admitting evidence of the former marriage naming the defendant's first wife by her maiden name instead of her husband's name, as alleged in the indictment.

**4.—Same—Evidence—Name of First Wife.**

Where, upon trial of bigamy, there was no controversy about the first wife's name, there was no reversible error in admitting testimony of a State's witness that the alleged first wife had been pointed out to her.

**5.—Same—Evidence—Marriage—License—Charge of Court.**

A legal marriage in this State can be solemnized without a marriage license, and can be proved without showing the issuance of a marriage license, and there was no error in admitting testimony that the witnesses saw the marriage ceremony performed without first showing the marriage license; nor was there error in not submitting an instruction that such license was necessary.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of bigamy; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Wiley & Baskett,* for appellant.—On insufficiency of indictment: McMahan v. State, 13 Texas Crim. App., 220; Kerry v. State, 17 id., 178; Duman v. State, 14 id., 464; McAfee v. State, 38 Texas Crim. Rep., 124; Vinsant v. State, 42 id., 413; Bryan v. State, 54 id., 18; Davis v. Com., 13 Bush, 318; Bryan v. State, recently decided.

On question of name of first wife: May v. State, 43 Texas Crim. Rep., 54; 11 Enc. Ev., p. 240, sec. 3.

*C. E. Lane,* Assistant Attorney-General, for the State.—Upon question of sufficiency of indictment: LaRose v. State, 29 Texas Crim. App., 215; May v. State, 4 id., 424; Watson v. State, 13 id., 76; Esser v. State, 66 S. W. Rep., 776; 2 Wharton's Crim. Law, 9th Ed., sec. 1714; Nichelson v. State, 53 Texas Crim. Rep., 631.

On question of former jeopardy: Parchman v. State, 2 Texas Crim. App., 228; Ogle v. State, 63 S. W. Rep., 1009; Eylar v. State, 37 Texas Crim. Rep., 257; Mohan v. State, 60 S. W. Rep., 552; Smith v. State, 49 S. W. Rep., 373; Jack v. State, 3 Texas Crim. App., 72; McAfee v. State, 38 Texas Crim. Rep., 124; Johnson v. State, 34 Texas Crim. Rep., 115; Longley v. State, 43 Texas, 490; Simco v. State, 9 Texas Crim. App., 338; Pickens v. State, id., 129; Alexandre v. State, 21 id., 407; Brothers v. State, 22 id., 447; Shubert v. State, 21 id., 551; Epps v. State, 38 Texas Crim. Rep., 284.

On question of marriage license: Hearne v. State, 50 Texas Crim. Rep., 431; Simon v. State, 31 id., 186; Cummings v. State, 36 S. W. Rep., 442.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of bigamy, his punishment being assessed at two years imprisonment in the penitentiary.

1. Appellant sets up by bill of exceptions, the action of the court, sustaining the demurrer of the county attorney to the plea of former jeopardy. The indictment upon which appellant was convicted recites and charges that appellant, on the 17th day of July, 1909, etc., unlawfully married Jessie Osteen, in Dallas County, and that he then and there had a lawful former wife living, to wit: Theresa Morville, etc. It seems from the allegation set up in the plea of jeopardy, that another indictment had been preferred by the grand jury of Dallas County, charging appellant did marry and have for his wife, Theresa Morville, and that this marriage occurred in Dallas County, and that while she was living with him, and on the 17th day of July, 1909, appellant married and had for his wife, Jessie Osteen, and that on that date he had both of these wives at one and the same time.

The plea and the statement in the bill of exceptions, together show that when appellant went to trial upon the first indictment and while the testimony was being introduced, he urged objection to the marriage of Jessie Osteen, because there was no allegation that that marriage occurred in Dallas County. This objection was sustained by the court, whereupon the State dismissed that prosecution. Appellant's contention is that by reason of these facts, he had been placed in jeopardy under the former indictment, and could not be further prosecuted. If the former indictment had been a valid one, under the circumstances, appellant's plea would be good and should have been sustained, but we are of opinion, under the authorities, his plea is not well taken. That indictment failed to allege that the marriage with Jessie Osteen occurred in Dallas County, therefore, that county had no jurisdiction of it under the indictment. This, we think, rendered the indictment invalid. It will be noted that a verdict was not reached in the case, but immediately upon discovering the fact, on objection to the testimony, that it was not alleged that Dallas County had jurisdiction by reason of the marriage to Jessie Osteen, by permission of the court, the prosecution was withdrawn from the jury, and the case dismissed. We are of opinion that there was no error in this and the court was correct.

2. We are further of opinion that the court was not in error in refusing to quash the indictment in this case. It sufficiently charges the offense under the authorities in this State. The indictment charges that appellant did unlawfully marry Jessie Osteen while he, appellant, then and there had a former wife, to wit: Theresa Morville; that is, the said W. A. Morville, at the time of his said marriage with Jessie Osteen, had theretofore been and was then and there lawfully married to said Theresa Morville, and at the time of said marriage with said Jessie Osteen, the said Theresa Morville was then and there living, etc. This form of indictment has been held

sufficient. The latest case perhaps on it by this court was Bryan v. State, decided at the last term of our court, which terminated the last Saturday in June, 1911.

3. Another bill of exceptions recites that Esther Madewell and H. P. Madewell were permitted to testify for the State that on 3d day of March, 1908, they each witnessed a marriage ceremony between defendant and one Theresa Deignon at the home of the father of the defendant in Dallas; that they had seen the said Theresa nearly every day since said marriage, and saw her only a day or two prior to the time of their testifying, and that she was still living; that she now lives and has lived since said marriage ceremony at the home of defendant's father, and had lived there ever since their marriage. Objection was urged to this testimony because immaterial, irrelevant, and prejudicial; further because defendant was not charged with having married Theresa Deignon, but having married Theresa Morville, and because there was no charge in the indictment the testimony would support. This was overruled and exception taken and approved. Under the charge in the indictment, we are of opinion the court was not in error. The indictment charged that on the 17th of July, appellant married Jessie Osteen in Dallas County, and that at that time he had another living wife, to wit: Theresa Morville, and that at that time he was lawfully married to Theresa Morville. This does not charge that he married Theresa Morville under the name of Theresa Morville, but it does charge at the time he married Jessie Osteen, his former wife, Theresa Morville, was then living. This eliminates, we think, any question of variance, and that the witnesses were authorized to testify under that allegation of the indictment.

4. Harriett Osteen, mother of Jessie, whom appellant was charged to have unlawfully married, testified that she had, since July 17th, the date of the marriage of her daughter to appellant, met a woman some three or four times that people called Theresa Morville; that she had never seen her nor knew her before July 17, 1909, and that she did not know her name except by what other people told her. Perhaps this testimony, strictly speaking, was not admissible, but taken in connection with the whole record, and in view of the fact that there was no question as to who Theresa Morville was, and that she had previously married appellant, and was identified as his wife, we do not believe the statement of this witness that Theresa Morville had been pointed out to her and that she had seen her several times, is of sufficient importance to reverse the judgment. If this was the only identification of the former wife, there might be trouble about the matter, but it seems to be uncontrovertably proved that he had married Theresa Morville or Theresa Deignon, and that at the time he made the second marriage, that she was his wife. This was testified to by witnesses, and there was no attempt to contradict it. We, therefore, think this evidence was not of sufficient importance to require a reversal of the judgment.

5. Esther Madewell and H. P. Madewell each testified as having been present and witnessed the marriage between defendant and Theresa Deignon on March 3, 1908; they both testified that the marriage was performed by one John Williams, who was then the justice of the peace for precinct No. 1 of Dallas County; that Esther Madewell testified that she did not know whether Williams had license for said marriage or not, and H. P. Madewell testified that Williams had some kind of a paper in his hand, but that he did not know whether same was a license or not; that this was all the testimony adduced upon the trial as to whether or not Williams had a marriage license at the time. In this connection appellant asked the following instruction:

"You are charged that before a justice of the peace can lawfully perform a ceremonious marriage, he must have a marriage license duly issued. You are therefore charged that the burden of proof is upon the State to show the issuance of a marriage license for the alleged first marriage before John Williams could legally marry the defendant to any one. And unless the State has so shown the issuance of said marriage license, you will acquit the defendant."

This record fails to show that Williams was introduced as a witness, and the marriage license of record was not introduced, and no reason given why Williams was not adduced or why the marriage license and the record of it was not. But be that as it may, we are still of opinion that the court was correct in not giving the special charge. A marriage license is not absolute requisite to a legal marriage. It is evidence of a marriage, and under our statute, authorized to be issued, but a legal marriage in this State can be solemnized without a marriage license, and under all the authorities, a legal and proper marriage can be shown without showing the issuance of license. The fact that appellant consummated the previous marriage seems not to have been questioned during the trial. Two witnesses testified they saw the marriage ceremony performed, and that they had lived together as man and wife since their marriage at the residence of appellant's father. We think the court would have been in error in submitting the charge, under the circumstances of this case.

We are of opinion that the record is sufficiently free from error to require this court to affirm the judgment and it is accordingly so ordered.

*Affirmed.*

[Rehearing denied December 6, 1911.—Reporter.]